## Forniquet *et al. v.* West Feliciana Railroad Company.

Where the company by its charter was allowed to reserve at the rate of seven per cent. interest for notes having four months to run, and eight per. cent. for notes at longer time, it was held, that on a note having four months to run from its date to maturity, the bank could not include days of grace, so as to take interest at the rate of eight per cent.

Where an account rendered by a bank is, offered as.evidence against it, it is competent to prove it by showing it had been correctly copied from the books of the bank, or by proving the hand writing of the officer who rendered the account.

IN ERROR from the circuit court of the county of Adams.

Action of assumpsit on a promissory note for four thousand three hundred and thirty-one dollars and eighty-six cents, dated 14th June, 1837, and due four months after date, credited with one thousand six hundred and forty dollars and seventy-two cents, October 5th, 1838. The declaration was in common form, general issue pleaded, and verdict and judgment for plaintiff, three thousand two hundred and forty-two dollars and seventy-six cents.

A bill of exceptions was taken on the trial, which stated that defendants offered in evidence to the jury an account between E. P. Forniquet and the Bank, in which the nett proceeds of the note sued on was credited to Fourniquet, on the 14th February, 1837, at four thousand two hundred and thirteen dollars and forty-five cents; and to lay the foundation for the admission of said account, called W. H. West, the cashier of the bank, and asked him as a witness, whether he was acquainted with the hand writing of H. H. Davis: whether he was, or not, discount clerk of the said West Feliciana Bank at the time said account was rendered to the defendant, E. P. Fourniquet: whether said account and signature were or were not in the hand writing of said Davis: whether it

Forniquet *et al. v.* West Feliciana Railroad Company.

was or not the business of said Davis, as discount clerk of said bank, to furnish such accounts: whether said account was or not a true copy from the books of said bank: whether the item charged in said account, June 14th, 1837, was not said note sued on and showed the true amount discounted by way of interest: whether it did or not appear by said account that the said note had four months to run from date to maturity, and that the rate of interest at which it was discounted was eight per cent: and whether the said item did not exceed eight per cent. from the time the note had to run: all of which questions and the account were ruled out. The object of this evidence was to establish usury. By its charter the bank was allowed to charge seven per cent. on notes having four months to run, and eight per cent. on notes having more than four months. It was argued that the days of grace made the note sued on more than a four months note.

Montgomery and Boyd, for plaintiffs in error.

The testimony of West was as competent as Davis to prove the account, to be the account of the bank, rendered by their proper agent. It was not necessary to call the agent who rendered the account, any other person could as well prove that it was the account rendered by the agent, and if the account had been admitted, it would show that the defendants were credited with the proceeds of the note sued on, after deducting more than eight per cent. for the time the note had to run.

If usurious interest were taken, it was a good defence to the whole action or a part, and it matters not which; the evidence which tended to prove that usurious interest was reserved should have been admitted.

| | | | |
|---|---|---|---|
| The amount credited as the proceeds of the note was | | | $4,213 45 |
| Amount of note - - | $4,331 86 | | |
| 8 per cent. int. 4 m's & 3 d's. | $118 39 | nett bal. | 4,213 47 |
| 7 per cent. int. 4 m's & 3 d's. | $103 68 | nett pro. | $4,228 18 |
| Amount over charged for interest | - | - | $14 73 |

The section of the charter which regulates interest provides that they shall not take more than 7 per cent. per annum upon

any of their loans or discounts made upon promissory notes which shall be payable within four months after such loan or discount. Acts of 1833, p. 183, sec. 4.

The word within means "not beyond," in the limits or compass of; as within a month or year.—*Webster.*

The language of the statute clearly limits the rate of interest on notes which by their terms are payable at four months, to seven per cent., and we cannot presume they meant to allow a higher rate of interest on account of the days of grace. The legislature refer to the language of the note, not to commercial usage, which allows payments to be made after the time limited for payment by the terms of the instrument. The terms of the act refer to what the parties contract to do. Where the contract is for a loan or discount within the limits of four months, the rate of interest is fixed at seven per cent. If the loan is for a period beyond that time, then eight per cent. may be reserved and taken. There can be no doubt the contract in this case was for a loan within the shortest limits of the charter, and as such could not rightfully be on terms of profit to the lender beyond the lowest rate.

A word more upon the point of testimony offered to prove these facts.

The question is, whether the agent is the best evidence of his authority and acts as an agent? We think he is not. If the doubt in the mind of the court below was on the proper manner of proving an agency, that doubt may be easily removed. The appointment by the board of directors, under seal, would be the highest evidence in law; and yet no such proof is ever required. It is sufficient to show the fact, that the clerk acts usually in that capacity under the eye of the principal officers and the directory. Whether he has ever been appointed or not, if they suffer him to act in the given capacity, then his acts in that sphere of duty will bind them. His acts become their acts.

The witness called was then a good witness to prove the clerkship and duty of Davis, as an agent of the bank. Any other rule would involve the absurdity of making the agent the only witness to prove his own authority; when, in truth, the law would hold the principal bound by the acts of one whom he knowingly and passively permitted to exercise a given office, whether he had ever

Forniquet *et al. v.* West Feliciana Railroad Company

actually appointed him as agent or not. There is no such principle. If West was a good witness .to prove the official agency of Davis, he was equally so to prove his official acts. The agency once established, the acts of the agent, and his admissions verbal or written, within the scope of his authority, would bind his principal, and these acts and admissions may be proved by any credible witness. They may be so proved against the denial of the agent himself. Indeed, the agent will generally be an interested witness, and where he is permitted to testify, it is usually with hesitation and from necessity.

It would not be contended that, if the plaintiff in the action had rendered the account offered in evidence, without any agency, and in person, (if such a thing could be predicated of a corporation,) Mr. West would not have been a good witness to prove the fact. The plaintiffs could not be called, in any suit, to prove their own hand writing to such an account. The doctrine implied by the decision in the court below, would go to the extent of calling the president and cashier of the bank to prove their signatures to bills and notes on which the bank might be sued. This cannot be a correct rule.

When the agency is once established, then the acts of the agent being the acts of the principal, may be proved in the same way, and the same rule of evidence applies to both. The agent may be allowed to prove his agency, but his acts, like the acts of his principal, may be and ought to be proved by disinterested witnesses.

In suits against corporations on their notes, the official character of the officer signing them being shown, any witness may prove the hand writing. So in actions where mercantile accounts are offered, the vouchers and exhibits furnished by the proper clerks in the shape of "accounts rendered," are always proved by any witness who knows the hand writing, and the only pre-requisite is, that the capacity of the clerk rendering the account be first shown. The defendant may always use such proofs when furnished to him by the other party, and the voucher will bind the principal when thus established. One of the questions asked of West was, "whether the account in question was not a correct copy from

Forniquet *et al. v.* West Feliciana Railroad Company.

the books? Now, this was perfectly competent testimony, without regard to any other questions asked. It would have been proving an exemplification, or a compared copy, which would be good even of a record. This was clearly wrong. An exemplified copy, made and compared with the original, by any witness, is always allowed.

C. P. Smith, contra.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The defendants in error instituted this suit on a promissory note made by the plaintiffs in error, which had been discounted in the bank. The note was made payable four months after date. As a defence, the account of defendant Forniquet with the bank was introduced to show how much interest had been charged, and the cashier of the bank was also introduced, and sundry questions were asked him, which the court would not allow him to answer, and to this decision of the court a bill of exceptions was taken.

The object designed by the questions propounded to the witness was, to show that the bank had charged eight per cent. interest, when in fact it was authorized to charge only seven per cent. per annum. Its powers in this respect present the first question to be decided, because if eight per cent. was lawfully taken, then of course the questions were immaterial, and the ruling them out would not constitute error.

The language of the bank charter is, that "they shall not take more than seven per cent. per annum upon any of their loans or discounts made upon promissory notes which shall be payable within four months after such loan or discount," and it is contended that as this note was payable four months after date, and the law gives three days grace, it was not such a note as was intended to be embraced by this clause of the charter, but falls properly under another, by which they were authorized to take eight per cent. In this respect we must look to the intention of the Legislature. Two rates of interest were established by the charter, seven per cent. for notes having four months to run, and eight per cent. for

Forniquet *et al. v.* West Feliciana Railroad Company.

notes having a longer time to run. It cannot be believed that the Legislature intended by using the term "within four months," to confine the operation of this clause to notes which would fall short of that time. It must apply to a note made as this was, payable four months after date. Suppose the language of the charter had been adopted, "we promise to pay within four months," such a note would not have matured until the expiration of four months, and three days of grace. Could it then have been said that it was not such a note as the charter meant to provide for? The Legislature must have supposed that they were providing for what is usually called four months paper, and the note on which this suit is brought falls under the name of a four months note. Seven per cent. was thought to be a proper interest for a loan on that time, and if the Legislature had the days of grace in view at all, they must have been considered merely as an incident, as indeed they are. We can regard it as nothing short of an evasion of the charter, to take a note which on its face will entitle the Bank to but seven per cent., but which by an incident attached by law runs it into a different rate of interest. In the case referred to in 2 Cowen, the court it is true held that for all practical purposes the days of grace constituted a part of the note, and such also seems to be the view taken in the other cases. This may be true, and still it does not affect the present question. We are endeavoring to arrive at the true meaning of the charter, and we think the Legislature intended to provide for notes which on their face were made payable four months after date, without regard to the mere customary privilege of the three days of grace. For the purpose of calculating interest the days of grace may constitute a part of the note, but when a note having a particular time to run is spoken of by an act of the Legislature, the fairest conclusion is that they spoke in reference to the time specified on the face of the contract, excluding any thing extraneous. The interest which a note draws after maturity is said to be an incident, and with equal propriety may the days of grace be said to be incidental. If this be the correct view of the subject, the testimony was improperly ruled out, for if more than legal interest was taken, the defendants, to say the least of it, were entitled to an abatement of something, either the whole or part of the interest.

11*

Forniquet *et al. v.* West Feliciana Railroad Company.

It was proposed to show the rate of interest by the account of Forniquet with the bank. It was competent to prove the correctness of this account by the cashier, either by showing that it had been correctly copied by the clerk from the books of the bank, or by proving the hand writing of the clerk. The account was offered by the bank, and having been made out by their clerk, they could not require any thing more than his hand writing, and his official capacity, or that he acted as clerk.

The judgment must be reversed and cause remanded.